UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> CREATD, INC. d/b/a "CREATD", <br><br> *Defendant*, | COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGMENT <br><br> Demand for Jury Trial <br><br> 1:25-cv-25-7594 |

Plaintiff Michael Grecco Productions, Inc., by its attorneys, for its complaint against defendants Creatd, Inc. d/b/a "Creatd", alleges as follows:

## I. INTRODUCTION

1. This action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 505, from the unauthorized copying, display, and distribution of a copyrighted photograph owned by Plaintiff in an article published to Defendant Creatd, Inc.'s ("Creatd") online platform.

2. Creatd is a publicly traded media and technology company that owns and operates Vocal (https://vocal.media), an online platform for publishing and monetizing content. Although it presents itself as a sophisticated media company built to respect and protect intellectual property, Creatd unlawfully exploited Plaintiff's photograph without license or permission. Plaintiff offered multiple opportunities to resolve the matter without litigation, but Creatd rebuffed each one—necessitating this lawsuit.

## II. THE PARTIES

3. Plaintiff Michael Grecco Productions, Inc., d/b/a "Michael Grecco Photography," ("MGPI" or "Plaintiff") is a California corporation organized and existing under the laws of the state of California with its principal place of business in Santa Monica, California. Plaintiff's

1

principal, Michael Grecco, is an award-winning commercial photographer noted for his iconic celebrity portraits, magazine covers, editorial images and advertising spreads.

4. According to its Securities and Exchange Commission profile,[1] Defendant Creatd, Inc. is a Nevada corporation with its principal executive office located at 419 Lafayette Street, 6th Floor, New York, NY, 10003. Upon information and belief, Creatd conducts business nationwide, including within this District, and operates the "Vocal" publishing platform at https://vocal.media, along with related domains and subdomains.

5. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, vice-principals, executives, management, agents, servants, or employees.

### III. JURISDICTION AND VENUE

6. This is a civil action for copyright infringement under the Copyright Act of 1976 (the "Copyright Act" or the "Act") and 17 U.S.C. §§ 101 *et seq.* and 505 *et seq.*

7. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

8. This Court has personal jurisdiction over Defendant because it maintains its corporate headquarters in New York and in this District. Defendant availed itself of the

---

[1] SEC, EDGAR, *https://www.sec.gov/edgar/browse/?CIK=0001357671 (last visited Sept. 12, 2025).*

2

privileges of conducting business in this District and the State of New York and incurred benefits from the alleged infringement, such that this Court's assertion of jurisdiction over Defendants does nothing to offend traditional notions of fair play and due process.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 35 N.Y.C.P.L.R. §§ 302(a)(1)-(3) because Defendant (1) committed copyright infringement (2) in and expressly aimed at the forum state of New York (3) and caused harm in this District to Plaintiff.

10. Venue is further proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant is a corporation headquartered in this District.

## IV. FACTUAL ALLEGATIONS

**A. The Importance of U.S. Copyright and Bundle of Rights**

11. Copyright a form of legal protection under Title 17 of the United States Code that grants creators of original works of authorship, including photographs, the exclusive rights to reproduce, distribute, display, and license those works.

12. The importance of these rights has been recognized since the founding of the Republic, when the U.S. Constitution empowered Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. As the Supreme Court has explained, "Copyright law encourages people to create original works and thereby ultimately serves the purpose of enriching the general public through access to creative works." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

13. The Court has likewise recognized that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate

3

ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

14.     Section 106 of the Copyright Act grants copyright owners these exclusive rights and makes it unlawful to reproduce, create derivative works from, distribute, publicly perform, or publicly display copyrighted work except as expressly permitted by law, and provides for damages upon infringement.

**B. Background on Plaintiff & the Photo**

15.     Plaintiff MGPI is the business entity photographer Michael Grecco ("Grecco") created to control and license his intellectual property.

16.     Grecco is an acclaimed author, award-winning photographer, and director based in Los Angeles whose work has built a global brand based on his celebrity, fine art, advertising, and editorial photography over a career that has spanned 45 years.[2]

17.     Grecco is a is often referred to in media as the "Master of Lighting." He is the author of two best-selling books on the subject, *Lighting and the Dramatic Portrait: The Art of Celebrity and Editorial Photography* (Amphoto, 2006), and *The Art of Portrait Photography: Creative Lighting Techniques and Strategies* (Amherst Media, 2009).

18.     In addition to his instructional books on photographic technique, Grecco has authored major photographic collections. His 2007 book *Naked Ambition* (Rock Out Books) presented a portfolio of images shot backstage at the Adult Video News Awards, later inspiring a 2010 documentary of the same name. More recently, his 2020 book *Punk, Post Punk, New Wave: Onstage, Backstage, In Your Face, 1978–1991* (Abrams Books) published his early photographs of the Boston punk scene, which debuted at Photo London in 2021 as part of the

---

[2] See, *e.g.*, *Los Angeles Center of Photography, Profile of Michael Grecco*, https://lacphoto.org/people/michael-grecco/.

touring multimedia exhibition Days of Punk.

19. Grecco is also an advocate for artists' rights behind the scenes. He is the founding board member of the collecting society, The American Society for Collective Rights (https://ascrl.org/), a leader in the administration and distribution of collective revenue from around the world for U.S. photographers, illustrators and rights holders of published works.

20. Grecco has held leadership roles in the photography community, including Chairman of the Board for Advertising Photographers of America/Los Angeles, National Vice President and Advocacy Committee Chair of its national organization, and five years on the Executive Board of Editorial Photographers. He has also been recognized as a Canon Explorer of Light, a Hasselblad Master Photographer since 2001, and a lecturer in the Kodak Mentor program.

21. MGPI generates income from licensing Grecco's photographs, which are protected, commercially valuable intellectual property.

22. MGPI generally licenses Grecco's photographs through a rights-managed model, typically limited in scope, duration, and medium.

23. MGPI maintains a public-facing website at www.grecco.com where it, *inter alia*, promotes Grecco's body of work and solicits licensing inquiries.

24. MGPI owns an original photograph taken by Grecco of actress Nana Visitor in character as Kira Nerys on the set of the episodic science fiction television show, *Star Trek: Deep Space Nine* (the "Photo"), as reproduced here:

25. The Photo was registered with the United States Copyright Office, effective July 7, 2010, bearing Registration Number VA 1-736-729.

26. Plaintiff MGPI, by written assignment from Grecco, holds the exclusive copyright in the Photo and therefore has standing to bring this action.

27. Plaintiff has never authorized or licensed the Photo to Defendant for any purpose.

**C. Defendant's Wrongful and Infringing Conduct**

28. On or about July 29, 2024, Plaintiff discovered its copyrighted Photo published as the lead image in an article titled *Why Bajorans from 'Star Trek' Are the Feminists We Need* (the "Star Trek" article, or the "Use") posted to Defendant's commercial website without Plaintiff's permission, as seen below:

6



29. The article appeared at https://vocal.media/viva/why-bajorans-from-star-trek-are-the-feminists-we-need, while the image was hosted on Defendant's *Cloudinary* server account at: https://res.cloudinary.com/jerrick/image/upload/d_642250b563292b35f27461a7.png,f_jpg,fl_progressive,q_auto,w_1024/5d72cd, where it was also publicly accessible.

30. Defendant's Use of the Photo did not credit Plaintiff or Michael Grecco in any way, nor did it contain any other information identifying the author or rights holder of the Photo.

31. Upon reviewing its business records, Plaintiff could not locate any evidence that Defendant licensed the Photo for use in the Star Trek article or anywhere else.

32. Plaintiff, through counsel, contacted Defendant numerous times starting in July 2024 regarding the unauthorized Use and, despite multiple requests for Defendant to produce a license, Defendant failed to do so.

33. Defendant did not act expeditiously to remove or disable access to the Photo

7

following receipt of Plaintiff's notice in July 2024. The Photo remained accessible in the Star Trek article and on Defendant's server thereafter and was not removed until after several subsequent complaints, sometime in September 2024.

34. In response to Plaintiff's counsel's efforts to resolve this matter without litigation, Defendant's principal, Chairman and CEO Jeremy Frommer repeatedly rebuffed Plaintiff's well-founded claims, ultimately terminating the discussion with an expletive, as reproduced here:

```
Fuck Off


--
Jeremy Frommer
Chairman & CEO
Creatd $CRTD
https://creatd.com
Sent from Front
```

35. During the relevant period, Defendant failed to maintain an active, properly designated DMCA agent in the Copyright Office directory, and failed to reasonably implement policies to receive, route, and process takedown notices.

36. The absence of Plaintiff's Photo from the Star Trek article would not have diminished the article's content, and thus, Defendant used Plaintiff's Photo solely to enhance the value of its own work without authorization.

37. By using the Photo without a license, permission, or notifying Plaintiff, Defendant deprived Plaintiff of the opportunity to negotiate a reasonable license fee. Had Defendant afforded Plaintiff this opportunity, Plaintiff would have required a license and corresponding fee for the Use.

8

38. Upon information and belief, Defendant had and exercised the right and ability to control the Photo's Use in the Star Trek Article, including by hosting, storing, transforming, and serving the Photo, by moderating and removing its articles (including the Star Trek article), and by controlling platform rules and monetization features.

39. Upon information and belief, Defendant received a direct financial benefit from the Use, including page views, engagement, advertising and subscription revenue, and overall brand promotion tied to traffic to the infringing page(s).

40. Unable to resolve its claims against Defendants, Plaintiff has been forced to initiate litigation, incurring additional and unnecessary legal costs.

41. By exploiting Plaintiff's copyright Photo without license, permission, or legal excuse, and with full knowledge that such authorization was required by law, Defendant has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

**D. Background on Defendants**

42. Defendant Creatd operates the "Vocal" publishing platform (www.vocal.media), a commercial service that invites users to "share your stories, build an audience, and earn money," and states that it moderates submissions.

43. Creatd markets itself as a public holding company combining technology and strategic investments, with Vocal listed as a core asset.[3]

44. Upon information and belief, Creatd monetizes the Vocal platform through

---

[3] *See Creatd's Portfolio Company Vocal, Inc. Completes 409A Valuation, Prepares for Private Investment Round*, Creatd, Inc. (Oct. 2, 2024), https://www.creatd.com/news/creatd-s-portfolio-company-vocal-inc-completes-409a-valuation-prepares-for-private-investment (last visited, Sept. 5, 2025).

features that include advertising enabled on user pages and creator-facing programs such as reads, tips, and challenges.

45.     Upon information and belief, Creatd owns and manages various intellectual properties, including copyrights, trademarks, and patents, and routinely enforce their rights in assets such as brand names, logos, media productions, technologies, and more.

46.     Creatd publicly announces corporate transactions and capital-markets objectives through press releases; for example, on January 22, 2025, it announced an agreement to acquire Flewber for $7.5 million and stated that the transaction would advance plans to uplist to a national exchange.[4]

47.     On July 15, 2025, Creatd announced it closed approximately $2.3 million in related investments, paid in Creatd preferred stock, to expand its investor-engagement ecosystem.[5]

48.     On August 15, 2025, Creatd announced it filed an S-1 with the U.S. Securities and Exchange Commission with fully audited financials, reporting approximately $9 million positive net equity and stating the filing advances plans to uplist to a national exchange.[6]

49.     Defendant utilizes a copyright disclaimer on each page published to its Vocal

---

[4] *See Creatd, Inc. to Acquire Flewber in USD $7.5 Million Deal Positioning Creatd at the Forefront of the Regional Air Mobility Market*, Creatd, Inc. (Jan. 22, 2025), https://www.creatd.com/news/creatd-inc-to-acquire-flewber-in-usd7-5-million-deal-positioning-creatd-at-the-forefront-of-the (last visited Sept. 5, 2025); *see also Under the Radar: Micro-Cap Rallies 50% on Acquisition News*, Globe & Mail (Jan. 22, 2025), https://www.theglobeandmail.com/investing/markets/indices/TOOC/pressreleases/30558603/under-the-radar-micro-cap-rallies-50-on-acquisition-news/ (last visited Sept. 5, 2025).

[5] *See Creatd Closes $2.3 Million Multi-Company Investment,* CityBiz (July 15, 2025), https://www.citybiz.co/article/718167/creatd-closes-2-3-million-multi-company-investment/ (last visited Sept. 5, 2025).

[6] *See Creatd, Inc. Files S-1 Registration Statement with SEC, Signaling Company's Intention to Uplist to a National Exchange*, Yahoo! Finance (Aug. 15, 2025), https://finance.yahoo.com/news/creatd-inc-files-1-registration-133000771.html (last visited Sept. 5, 2025).

10

platform ("© 2025 Creatd, Inc. All Rights Reserved"), further indicating that Defendant understands the importance of copyright protection and intellectual property.

50.     Creatd publishes Terms of Use (https://vocal.media/terms-of-use) for the Vocal platform and a "Copyright and DMCA Policy" (https://vocal.media/resources/copyright-and-dmca-policy). Among other things, these documents assert ownership of the Service and content, require users to respect copyrights, and state that the Terms and the Copyright/DMCA Policy form part of the governing agreement. For example:

> *You* [i.e., the website viewer] *acknowledge and agree that we and our licensors retain ownership of all intellectual property rights related to the Services, including applicable copyrights, trademarks and other proprietary rights. Other product and company names that are mentioned on the Services may be trademarks of their respective owners.*
>
> *Vocal grants you a personal, non-transferable, non-exclusive, revocable, limited license to use and access the Services. We reserve all rights not expressly granted to you by these Terms.*

51.     In its Terms of Use, Creatd represents that it may remove or disable access to content and provides a process for reporting copyright infringement via its platform help center. These policies reflect Defendant's right and ability to control infringing content and its knowledge of copyright compliance obligations.

52.     Creatd also publishes Community Guidelines for the Vocal platform (https://vocal.media/resources/community-guidelines) and periodically issues "moderation updates" describing how it evaluates creators' compliance and enforces the Guidelines. These materials reflect Defendant's right and ability to control content on its service.

53.     Because Defendant Creatd is a sophisticated corporate media publisher that regularly contemplates its published policies, moderation controls, and commercial exploitation of user content, Defendant was aware, or at minimum should have been aware, of Plaintiff's

11

rights as a copyright holder and Defendant's responsibilities under the Copyright Act when it wrongfully failed to register a registered DMCA agent with the United States Copyright Office and allowed the publication of Plaintiff's copyrighted Photo on its website without authorization.

54. By exploiting, or allowing its website to be used to exploit, Plaintiff's copyrighted Photo without a license, permission, or legal excuse, and with knowledge that such authorization was required by law, Defendant Creatd has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

## V. CAUSES OF ACTION

### COUNT 1: Direct Copyright Infringement (17 U.S.C § 106)

55. Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

56. Plaintiff owns, and at all relevant times has owned, all exclusive rights under the to the Photo, which is registered with the U.S. Copyright Office as VA 1-736-729 (effective July 7, 2010).

57. Under 17 U.S.C. §§ 106, Plaintiff holds the exclusive rights to reproduce (copy), distribute, display, perform, and create derivative works from its copyrighted Photo.

58. Without authorization, Defendant volitionally reproduced and publicly displayed the Photo by storing copies on its servers, placing the Photo within an article published to Defendant's website, and transmitting copies to the public for commercial benefit.

59. Defendant's unauthorized use displaced a paid license and impaired the market for the Photo.

60. Defendant misleadingly removed or otherwise failed to credit Plaintiff or Michael Grecco as the author or rights holder of the Photo, more likely than not for the purpose of giving

12

the public the impression that the use was legitimate.

61. By the foregoing acts, Defendant infringed Plaintiff's exclusive rights under 17 U.S.C. § 106.

62. Defendants had no license, permission, or other authorization to use, copy, publicly display, distribute, or make derivative copies of the Photo.

63. Defendant knew or should have known that use of the Photo required a license and that Plaintiff is a professional photographer who earns income from licensing his work.

64. Defendant knew or should have known that Plaintiff maintained a publicly accessible website to showcase his body of work and expressly invite licensing inquiries via a dedicated permissions contact.

65. Plaintiff did not authorize Defendant or any person or entity acting in concert with Defendant to use, copy, publicly display, distribute, license, manipulate, or otherwise exploit the Photo.

66. Plaintiff is informed and believes the Defendant cannot produce any valid license or other authorization for its use of the Photo.

67. Plaintiff is informed and believes that Defendant's infringement was willful, or at least reckless, demonstrating a complete disregard for, and indifference to, Plaintiff's rights.

68. Plaintiff has suffered damages as a direct and proximate result of Defendant's infringement of the copyrighted Photo.

69. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profit pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c), with amounts will be proved at trial.

70. Plaintiff is entitled to recoup costs incurred in litigating the aforementioned infringements, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

71. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendant and any persons acting in concert with the Defendant.

### COUNT 2: Contributory and/or Vicarious Infringement of Copyrights

72. Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

73. Defendant had the right and ability to supervise and control the infringing activity alleged herein, including removing or blocking access to infringing content, terminating accounts, and controlling monetization, ranking, and recommendation systems that surface and promote user content across the Vocal platform.

74. Defendant knowingly induced, caused, or materially contributed to the infringing acts of its users by providing hosting, storage, encoding, indexing, search, ranking, recommendation, optimization, and distribution tools, and by failing to act expeditiously to cease hosting and serving the Photo upon receiving Plaintiff's July 29, 2024 § 512(c)(3) notice.

75. Upon information and belief, Defendant received a direct financial benefit from the infringement because it benefits from the profits generated by content posted by its users, from increased traffic, engagement, advertising, and subscription revenue.

76. Defendant further enabled, induced, facilitated, materially contributed to, or directly assisted in the direct infringements alleged in Count I by supplying capital, technology,

personnel, and operational control over the systems used to store, process, promote, and monetize the infringing copies, and by directing or approving policies that facilitated the initial infringement and the Photo's continued availability after notice.

77. Defendant knew or had reason to know of the infringing activity before and after receipt of Plaintiff's notice, because it exercises complete control over the daily operations and business making decisions of Vocal, including through its moderation, curation, and analytics systems.

78. Defendant further knew or had reason to know of the direct infringements alleged in Count I because Plaintiff had explicitly warned Defendant about the infringing uses in its July 29, 2024 § 512(c)(3) notice, yet Defendant failed to act for months, as described above.

79. Defendant is contributorily and/or vicariously liable for the direct infringement alleged Count I.

80. Plaintiff is informed and believes that the aforementioned acts of infringement were reckless and demonstrated a complete disregard for, and indifference to, Plaintiff's copyrights and exclusive rights under copyright.

81. Plaintiff has suffered damages as a direct and proximate result of Defendant's infringement of the copyrighted Photo.

82. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profit pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c), with amounts will be proved at trial.

83. Plaintiff is entitled to recoup costs incurred in litigating the aforementioned infringements, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

84. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendant and any persons acting in concert with the Defendant.

## VI. JURY TRIAL DEMANDED

85. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

86. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

   a. Awarding Plaintiff damages derived from the infringing acts, in the maximum amount permitted by law with respect to each instance of Defendant's infringing use of the Photo, whether pursuant to actual damages and attributable profits under 17 U.S.C. § 504(b) or statutory damages under 17 U.S.C. § 504(c), including attorneys' fees and costs;

   b. Granting Plaintiff injunctive and other equitable relief enjoining Defendant, its respective officers, agents, vendors, servants, and employees, and all those acting in concert from directly or indirectly reproducing, publicly performing, publicly displaying, or distributing the copyrighted Photo;

   c. Awarding prejudgment and post-judgment interest to the maximum extent permitted by law;

   d. Awarding Plaintiff's attorneys' fees, costs, and expenses in this action pursuant to 17 U.S.C. § 505 derived from Defendant's infringing acts; and

    e. Awarding such other and further relief as the Court may deem just and proper.

Dated: September 12, 2025.

                 Respectfully submitted,

                  <u>*By: /s/ Bryan Hoben*</u>
                  HOBEN LAW GROUP
                  Bryan D. Hoben
                  1112 Main Street
                  Peekskill, New York 10566
                  347-855-4008
                  bryan@hobenlaw.com

                  AND

                  DUNCAN FIRM, P.A.
                  James H. Bartolomei III
                  809 W. 3rd Street
                  Little Rock, AR 72201
                  Telephone: (501) 228-7600
                  Email: james@duncanfirm.com

                  *Attorneys for Plaintiff Michael Grecco Photography, Inc.*